* * * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. The Full Commission adopts the Opinion and Award of Deputy Commissioner Holmes with modifications.
 * * * * * * * * * * *
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by parties as:
 STIPULATIONS *Page 2 
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff and defendant at all times relevant herein.
3. It is stipulated that all parties are properly before the undersigned deputy commissioner and that the Industrial Commission has jurisdiction over the parties and of the subject matter.
4. The employer in this case is Kidde Technologies and the carrier liable on the risk is St. Paul Travelers.
5. Plaintiff sustained an injury by accident on May 21, 2003 and November 16, 2004.
6. Plaintiff's average weekly wage is $676.62, which yields a weekly compensation rate of $451.10.
 * * * * * * * * * * *
Based upon all the competent evidence from the record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. On May 21, 2003, while employed by defendant as a technician, plaintiff sustained an injury to his right arm when he attempted to retrieve a part that had dropped in hydrofluoric acid. Carol Rossi, the Human Resources Director for defendant, testified that plaintiff was specifically instructed on safety precautions and disregarded these safety steps when he sustained his injuries.
2. On May 21, 2003, plaintiff was transferred by ambulance to the Wilson Medical Center. Thereafter, he was transferred to UNC-Chapel Hill Burn Center for specialized care and observation. *Page 3 
3. Plaintiff was treated at the UNC Healthcare Jaycee Burn Center for his burn injury. Plaintiff was initially given three ampoules of calcium gluconate as well as calcium in his IV fluids. He was initially found to have sinus bradycardia, with his heartbeats somewhere between forty to fifty beats per minute. A cardiologist assessed plaintiff and found there was no side effect from the hydrofluoric acid that would pertain to sinus bradycardia with normal serum calcium.
4. On May 22, 2003, plaintiff was discharged with medications and instructed to follow up with the UNC Burn Clinic. Plaintiff was also taken out of work until June 4, 2003 and instructed that he could return on that day for light duty only.
5. On July 1, 2003, plaintiff presented at UNC Hospital with complaints of swelling and pain in his right hand. On examination, there was no swelling or erythema observed and he was found to have a full range of motion in his wrist with normal pigmentation. Plaintiff was diagnosed with a chemical burn with pain and itching and was instructed to continue wearing his pressure garment, isotonic glove, and follow up with an ear, nose and throat physician for further evaluation for headaches. Dr. Gloria Liu with UNC Hospital also assessed that plaintiff would be at maximum medical improvement in about six to twelve months.
6. On August 5, 2003, plaintiff presented at UNC Hospital with complaints of pain and swelling in his right hand. On examination, Dr. Liu assessed that plaintiff had a full range of motion, a nicely healed wound, and there was no significant edema present on his right hand. Dr. Liu diagnosed plaintiff with a chemical burn, increased his Neurontin dosage and recommended the continued use of a pressure garment and isotonic glove. Dr. Liu also assessed that she would like to have plaintiff return to work and gradually work up to full time employment. Plaintiff was released to return to work at light duty working eight hours per day. *Page 4 
7. On September 16, 2003, plaintiff presented at UNC Hospital with complaints of swelling and pain in his right hand. Plaintiff's Neurontin dosage was modified due to drowsiness and a TENS unit was recommended along with physical therapy treatment. Plaintiff continued to work for defendant and continued to present to UNC Hospitals for continued treatment of his chemical burn.
8. On February 10, 2004, plaintiff was seen by Dr. Michael Peck. Dr. Peck did not find any skin abnormalities but did find motor weakness in his right hand. Dr. Peck testified that he provided plaintiff with his initial medical treatment regarding his burn injury. Dr. Peck assessed that plaintiff's symptoms were consistent with hydrofluoric acid burns and once he received calcium treatments, plaintiff returned to work. Dr. Peck further indicated that he referred plaintiff for nerve conduction tests, which were normal and revealed no compression. Dr. Peck also testified that he did not find any abnormalities in reference to plaintiff's arm, including no changes in color, redness, vascularity, or scar tissue.
9. On March 16, 2004, plaintiff was again evaluated by Dr. Liu. Dr. Liu assessed no evidence of nerve damage and encouraged plaintiff to use his right hand as much as possible.
10. On November 16, 2004, while employed by defendant, plaintiff sustained a burn to his right arm from boiling water. On November 19, 2004, plaintiff presented to Wilson Immediate Care, where plaintiff was diagnosed with mild second-degree burn on the right dorsal forearm.
11. On November 22, 2004, plaintiff presented to Dr. Krabill for a follow up for the second degree burn to his right forearm from boiling water. Dr. Krabill instructed plaintiff to stop dressing the burn as his wound was no longer draining. Plaintiff was instructed to return in a week only if still having trouble. *Page 5 
12. On November 22, 2004, plaintiff presented at Garner Orthopaedic and Sports Medicine Specialists for an independent medical evaluation. Plaintiff stated that he noted an overall improvement over the last year but recently burned his right forearm in boiling water. Dr. Scott Sanitate addressed his recent burn by wrapping the wound. Dr. Sanitate also opined that plaintiff's condition would improve and he did not believe there would be any permanent impairment rating based on his present condition.
13. On December 13, 2004, Dr. Krabill noted that plaintiff's wound had healed beautifully and that the skin was fully reepithelialized. Dr. Krabill anticipated that there would be no problem beyond some change in pigmentation in the area of the burn and that plaintiff may resume full, unrestricted work. Plaintiff was to follow up as needed.
14. In November 2004, plaintiff was terminated by the defendant for failing to follow company policy, excessive absenteeism, sleeping on the job, late returning from breaks, and clocking in too early. As such, plaintiff has refused suitable employment.
15. There is insufficient evidence to determine if plaintiff has experienced any permanent partial disability as a result of his injury by accident to his right arm.
16. The credible evidence of record does not support a finding that plaintiff sustained any type of disfigurement or scarring nor has plaintiff produced any evidence that his injuries have affected his future earning capacity or reduced his future earning power.
 * * * * * * * * * * *
Based on the foregoing findings of fact, the Full Commission makes the following: *Page 6 
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident arising out of and in the course and scope of his employment on May 21, 2003 and November 16, 2004. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff is entitled to have all medical treatment as a result of his above described injuries paid by the defendants. N.C. Gen. Stat. § 97-25.
3. Plaintiff's disfigurement did not effect his earning capacity nor reduce his future earning power, which would entitle him to any type of award for scarring. N.C. Gen. Stat. § 97-31.
4. As plaintiff was terminated for misconduct unrelated to his compensable injury, plaintiff has constructively refused suitable employment without justification. Therefore plaintiff is not entitled to disability compensation. N.C. Gen. Stat. § 97-32.
5. Defendants shall pay for another evaluation by plaintiff's treating physician to determine whether or not plaintiff has sustained any permanent partial disability. N.C. Gen. Stat. §§ 97-25, 97-31.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for any ongoing temporary total disability benefits and for any scarring or disfigurement is hereby DENIED.
2. Defendants shall provide another evaluation by plaintiff's treating physician to determine if there will be any PPD rating. *Page 7 
3. Should a PPD rating be determined, defendants shall pay said amount to plaintiff in a lump sum pursuant to N.C. Gen. Stat. § 97-31, less 25% which shall be deducted and sent to plaintiff's counsel as an approved attorney fee.
4. Defendants shall pay the costs, including an expert witness fee of $450.00 to Dr. Michael Peck and $525.00 to Dr. Gloria Liu, if not paid by prior order.
This the 15th day of October 2007.
 S/_______________________
 BUCK LATTIMORE
 COMMISSIONER
CONCURRING:
S/_______________________ BERNADINE S. BALLANCE COMMISSIONER
S/___________________ DANNY L. McDONALD COMMISSIONER *Page 1